IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
MAR 13 2001
CLERK

BEVERLY HACEESA, Individually and As Personal Representative of the ESTATE OF HARDY HACEESA, and FIRST FINANCIAL TRUST COMPANY, As Conservator for Shenoel Haceesa, A Minor,

Plaintiffs,

vs. CIV 99-0060 MV/RLP

THE UNITED STATES OF AMERICA,

Defendant.

PLAINTIFFS' REQUESTED FINDINGS OF FACT AND CONCLUSIONS OF LAW

COME NOW Plaintiffs, by and through their attorneys, and, pursuant to the Pretrial Order entered in this case, offer the following as their requested Findings of Fact and Conclusions of Law:

REQUESTED FINDINGS OF FACT

1. Plaintiff Beverly Haceesa is a resident of the State of New Mexico, San Juan County. She is the wife of Hardy Hacessa, deceased, and the mother of Shenoel Hacessa.

2. Plaintiff First Financial Trust Company, is a corporation within the State of New Mexico, County of Bernalillo.

3. Beverly Hacessa is the Personal Representative of the Estate of Hardy Hacessa. Plaintiff First Financial Trust Company is the Conservator and guardian of Shenoel Haceesa.

4. The Defendant United States of America operates the Indian Health Service, an agency of the government of the United States of America and, through it, owns and operates





Northern New Mexico Navajo Hospital in Shiprock, New Mexico.

5. In April, 1998, Hardy Haceesa was a twenty-three (23) year old male, father of Shenoel Haceesa and husband of Beverly Haceesa. He was employed as a construction worker and in the course of his employment was routinely required to work in structures, buildings and houses where it was possible, if not likely, that he could be exposed to deer mice.

6. On April 25, 1998, at approximately 8:39 a.m. Hardy Haceesa and Beverly Haceesa went to the Northern New Mexico Navajo Hospital (NNMNH) because Hardy was complaining of chest discomfort, difficulty breath, fever and generalized aches and pains.

7. Beverly and Hardy both knew that his symptoms were consistent with hanta virus. They also knew that they lived in a geographic region where most of the reported hanta virus cases in the Country have been diagnosed. They also knew that the "El Nino" weather pattern of the previous year had increased the food available for deermice, the carriers of the disease, and that more food for deermice meant more deermice, and a greater risk of contracting the disease.

8. At NNMNH, Beverly and Hardy were treated by a nurse practitioner named Shelly Rhodes. This was Ms. Rhodes' first job out of nursing school, which she had completed 6 months earlier in Tennessee.

9. NNMNH did not have a regular physician available to take responsibility for the evaluation, care and treatment of the Hacessas. They did have a contract physician, Dr. Bharat Patel, who had been in the State of New Mexico for two days before the Hacessas came to the NNMNH emergency room.

10. Nurse Rhodes noted on examining Mr. Hacessa that he had difficulty breathing, sore throat and nausea and that he was concerned that his symptoms "may be related to entering

trailer w/mice". She ordered a CBC which showed that Mr. Haceesa had an abnormally low platelet count (111,000) and low potassium. She also noted that he had a fever and an overall poor general appearance.

11. As of this time Nurse Rhodes had received absolutely no education or training as to proper diagnosis of potential hanta virus from the defendant prior to the time she was required to evaluate and treat Hardy. She did ask that Dr. Patel look at Hardy, although she did not ask him to assume responsibility for Hardy's care. She did not report the platelet count to Dr. Patel.

12. Dr. Patel, having been in New Mexico for only two days, had no better idea as to how to evaluate a potential hanta virus patient than did Nurse Rhodes. He did manage to elicit a dry and non-productive cough from Hardy. However, she, not the doctor, remained the person responsible for Mr. Hacessa's care during the entire time he was seen and treated at NNMNH.

13. Nurse Rhodes diagnosed Mr. Haceesa with bronchitis, prescribed erythromycin and ibuprofen, sent him home and told to him to return to the local clinic near their home for a recheck in two (2) days.

14. Mr. Hacessa's symptoms were not consistent with a typical bronchitis patient. They were consistent with a typical patient suffering from the early stages of hanta virus, which include, complaints of pain on breathing, fever, abnormally low platelet count, nausea, exposure to rodent droppings. While cough occurs in a minority of cases, when present, it is characterized by a dry or non-productive cough of the kind Dr. Patel elicited from Hardy.

15. The University of New Mexico Hospital had a hanta virus blood test available on a 24 hour, 7 day a week basis at the time Hardy was seen at NNMNH. Results were available within hours from the time they were submitted. Despite the report of rodent exposure and

despite the fact that this is an area of the country where more cases of hantavirus have been diagnosed than anywhere else, a blood test to determine the possibility of hantavirus was not taken from Hardy and sent to the University of New Mexico Hospital. Nurse Rhodes had no idea a blood test was even indicated.

16. Mr. Haceesa died of hantavirus three (3) days later on April 28, 1998. Between the time of defendant's negligence and the time of his death he endured pain, suffering and emotional distress. There is evidence that he was seen on April 27 and April 28, 1998 at San Juan Regional Medical Center in Farmington, and that the physicians there were negligent in their treatment of Hardy on those dates.

17. The failure of the agents and employees of NNMNH to properly diagnose and manage Mr. Haceesa's hanta virus resulted in a loss of any chance he had to survive the disease. With proper diagnosis and treatment his chances of survival were approximately 65%.

18. The present value of Hardy Hacessa's loss of earning capacity is $1,490,993.

19. The present value of Hardy Hacessa's loss of household services is $381,040.

20. The value of Hardy Hacessa's lost enjoyment of life is $3,000,000.00.

21. The value of the pain and suffering Hardy Hacessa underwent between April 25th and his death is $150,000.

22. The value of the emotional distress Hardy Hacessa underwent between April 25th and his death is $150,000.

23. The funeral expenses incurred to bury Hardy Hacessa were $5444.73.

24. As a result of Hardy's death, Beverly Hacessa has suffered loss of consortium, including the conjugal fellowship of husband and wife, right to take company of the other,

society, cooperation, affection, guidance, and companionship. The value of this loss is $1,000,000.00.

25. As a result of Hardy's death, Shenoel Hacessa has suffered loss of parental guidance, counseling and companionship. The value of this loss is $1,000,000.00.

CONCLUSIONS OF LAW

1. The United States of America is the proper Defendant in this case pursuant to the provisions of 28 USC § 2679 (a) and (b).

2. Jurisdiction is proper in this Court pursuant to the provisions of 28 U.S.C. §1346.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1402(b).

4. All administrative prerequisites for filing of this suit set forth under 28 U.S.C. §2675 have been met.

5. Defendant is vicariously liable for the negligence of the agents and employees of NNMNH and the Indian Health Services, including the negligence of Nurse Practitioner Rhodes.

6. Defendant, its agents and employees were negligent in their care of Hardy Haceesa on April 25, 1998 in the following respects:

(a) failing to take an appropriate exposure and occupational history;

(b) failing to recognize that Hardy's clinical presentation was consistent with hantavirus;

(c) failing to recognize that a blood test to determine whether Hardy was suffering from hantavirus should have been sent to UNMH;

(d) failing to recognize that Hardy should have been admitted to NNMNH

pending the results of a blood test to rule out hantavirus;

(e) failing to recognize that Hardy's clinical presentation was not consistent with bronchitis,

(f) failing to recognize that they were not qualified to assess whether or not Hardy was suffering from hantavirus and that they should have sought the advise of a healthcare provider who was so qualified;

(g) failing to make any effort to see to it that the personnel charged with evaluating potential hanta virus patients in its NNMNH emergency room were properly trained or educated as to the diagnosis and treatment of such patients; and

(f) failing to establish appropriate protocols in the management and assessment of patients presenting with symptoms of hantavirus.

7. Defendant's negligence, as set forth above, proximately caused the loss of the 65% chance of survival that Hardy would have had with proper diagnosis and treatment.

8. Under New Mexico law, and, in particular, *Alberts v. Schultz*, 1999-NMSC-15, ___N.M.___, 975 P.2d 1279, Plaintiffs are entitled to recover damages in an amount directly proportional to the lost chance of survival for Hardy Hacessa that was the result of defendant's negligence, which is 65%.

9. Under New Mexico law, and in particular, *Lujan v. Healthsouth Rehabilitation Corp.* 120 N.M. 422, 425, 902 P.2d 1025, 1028 (S. Ct. 1995), the negligence of the defendant is successive, and not concurrent with, any negligence of San Juan Regional Medical Center on April 27th and 28th, 1998. Thus, the defendant is jointly and severally liable for any negligence of San Juan Regional Medical Center.

10. The total amount of damages to be awarded to Plaintiffs, according to the Conclusions of Law set forth above is $ 4,665,360.52.

11. Under New Mexico law, and in particular, §41-2-3 NMSA 1978, the Court finds that there are aggravating circumstances surrounding the defendant's negligence. The defendant did absolutely nothing to educate its agents and employees as to how to recognize and deal with the expected, known and deadly threat of hanta virus. This is especially aggravating in light of the fact that NNMNH is in the geographic center of the world for this disease, that a renewed outbreak of the disease was expected and publicized, that Hardy Hacessa and his wife both raised concerns that he might be suffering from the disease to Nurse Rhodes, and that the disease is so deadly. Accordingly the damage award is enhanced to $6,000,000.00.

12. Pursuant to the Local Rules of this Court Plaintiffs are to submit a cost bill within 30 days of the date of entry of this Judgment. Plaintiffs are also entitled to pre- and post-judgment interest. In light of the fact that defendant made no offer of settlement or compromise prior to trial, the Court awards pre-judgment interest at 10% per annum, and post judgment interest at the statutory rate.

Respectfully submitted,

LAW OFFICES OF JAMES P. LYLE, P.C.

James P. Lyle
1904 Rio Grande Blvd., N.W.
Albuquerque, NM 87104
(505) 843-8000
(505) 843-8043

I hereby certify that a true copy of the foregoing pleading was mailed to opposing counsel of record this 13th day of March, 2001.

James P. Lyle