IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BEVERLY HACESSA, Individually, and
FIRST FINANCIAL TRUST COMPANY,
as Conservator for SHENOEL HACESSA,
A Minor,

                                                             Civ. No. 99-0060 MV/RLP

              Plaintiffs,

vs.

UNITED STATES OF AMERICA,

              Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiffs' Motion for Entry of Judgment and Memorandum in Support, filed November 13, 2003 **[Doc. No. 88]**. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that Plaintiffs' motion is well-taken in part and not well-taken in part and will be **GRANTED** in part and **DENIED** in part.

## BACKGROUND

At 8:39 p.m. on Friday, April 25, 1998, the late Hardy Haceesa visited the emergency room at the Northern New Mexico Navajo Hospital ("NNMNH") in Shiprock, New Mexico, suffering from chest discomfort, difficulty breathing, fever, pain on respiration and generalized aches and pains. Mr. Haceesa reported that he thought his condition might be related to exposure to deer mice. Nurse Practitioner Shelly Rhodes treated Mr. Haceesa, recording his medical history, performing a physical examination and ordering a CBC and chest x-ray. A contract physician, Dr. Bharat Patel, who was working for his first day at the NNMNH, examined Mr. Haceesa and elicited a dry cough. He then diagnosed Mr. Haceesa with bronchitis and gave him one liter of intravenous fluids and prescriptions

for erythromycin and ibuprofen.  Mr. Haceesa was discharged at 11:05 p.m. with instructions to make a follow-up visit to the local clinic two days later.

Mr. Haceesa then visited and was treated at the San Juan Regional Medical Center ("San Juan Regional") in Farmington, New Mexico on Monday April 27, 1998 and Tuesday April 28, 1998.  On April 28, 1998, Mr. Haceesa was transferred to the University of New Mexico Hospital ("UNMH"). Mr. Haceesa died on April 28, 1998, shortly after his arrival at UNMH.  Only after his death was Mr. Haceesa correctly diagnosed with hantavirus pulmonary syndrome, a rare, deadly disease caused by exposure to airborne particles of the urine of infected mice and characterized in its early stages by flu-like symptoms.  The NNMNH, owned and operated by the Indian Health Service ("IHS"), an agency of the United States Department of Health and Human Services ("DHHS"), is located in the geographic center of the world for hantavirus.

Following Mr. Haceesa's death, on July 2, 1998, two administrative claims were filed with the IHS:  a claim by Mr. Haceesa's widow, Beverly Haceesa, and a claim by First Financial Trust Company ("Conservator"), as Conservator for Shenoel Haceesa ("Shenoel"), Mr. Haceesa's minor daughter.  Thereafter, on October 26, 1998, a third claim was filed by Ms. Haceesa, Personal Representative of Mr. Haceesa, on behalf of Mr. Haceesa's Estate (the "Estate").  On April 28, 1999, DHHS sent to Plaintiffs' counsel a notice of final denial of all three of the administrative claims.

On January 15, 1999, Plaintiffs Ms. Haceesa, appearing individually, and the Conservator for Shenoel filed the instant action for medical negligence and wrongful death under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§1346(b), 2671 *et seq*. On December 3, 1999, Plaintiffs filed a Motion to Amend Complaint by Interlineation ("Motion to Amend") to, *inter alia*, add Ms. Haceesa as the Personal Representative of the Estate and add claims for Mr. Haceesa's pain and suffering and

emotional distress prior to his death and his loss of enjoyment of life. Over Defendant's objection, the district court granted Plaintiffs' Motion to Amend in a Memorandum Opinion and Order entered on March 6, 2000. On March 10, 2000, Defendant filed a Motion for Reconsideration of the Court's Memorandum Opinion and Order Entered on March 6, 2000 ("Motion for Reconsideration"), which the district court denied in a Memorandum Opinion and Order entered on April 20, 2000.

This Court held a bench trial from April 2 to April 4, 2001. In the Amended Findings of Fact and Conclusions of Law ("Amended Findings"), entered on June 21, 2001, the Court found that the failure of the agents and employees of NNMNH to properly diagnose and manage Mr. Haceesa's hantavirus resulted in a loss of any chance he had to survive the disease and that, with proper diagnosis and treatment, his chances of survival would have been 65%. The Court calculated Plaintiffs' damages as follows: (1) the present value of Mr. Haceesa's lost earning capacity was $1,454,191; (2) the present value of Mr. Haceesa's loss of household services was $136,085; (3) the value of Mr. Haceesa's loss of enjoyment of life valued $1,012,000; (4) the value of the pain and suffering Mr. Haceesa underwent between April 25, 1998 and his death was $100,000; (5) the value of the emotional distress Mr. Haceesa underwent between April 25, 1998 and his death was $100,000; (6) the funeral expenses incurred to bury Mr. Haceesa were $5,444.73; (7) the value of Ms. Haceesa's loss of consortium was $250,000; and (8) the value of Shenoel's loss of parental guidance, counseling and companionship was $250,000.

Based on its findings of fact, the Court held that Defendant, its agents and employees were negligent in their care of Mr. Haceesa and that Defendant's negligence proximately caused the loss of the 65% chance of survival that Mr. Haceesa would have had with proper diagnosis and treatment. The Court held that Defendant's negligence was successive rather than concurrent with any

negligence of San Juan Regional and that Defendant was not jointly liable with San Juan Regional but rather was liable for the entire loss of the 65% chance of survival.  Accordingly, the Court determined Plaintiffs' damage award to be 65% of $3,307,720.73, the total damages suffered by Plaintiffs, or $2,150,018.47.  Finally, the Court found that the $600,000 cap on damages under the New Mexico Medical Malpractice Act did not apply.  In the Amended Judgment, entered on June 21, 2001, this Court ordered that Defendant pay to Plaintiffs the sum of $2,150,018.47 in compensatory damages plus post-judgment interest and Plaintiffs' costs.

Defendant appealed the Amended Judgment to the United States Court of Appeals for the Tenth Circuit.  On appeal, Defendant challenged this Court's damage award, arguing that: (1) New Mexico's $600,000 statutory cap on medical malpractice recoveries applies in this case; (2) the government's liability should be reduced to reflect its comparative negligence relative to San Juan Regional; and (3) certain of Plaintiffs' claims are barred because they were not administratively exhausted at the time suit was filed.  In *Haceesa v. United States*, 309 F.3d 722 (10th Cir. 2002), the Tenth Circuit held that this Court erred (1) in concluding that the recovery cap did not apply; (2) in failing to calculate the government's liability on the basis of New Mexico's "loss of chance" approach; and (3) in concluding that the Estate's claim for wrongful death was timely filed.  *See id.* at 724.  The Tenth Circuit reversed and remanded to this Court for further proceedings consistent with its opinion.

Thereafter, on November 17, 2003, Plaintiffs filed the instant motion, asking the Court to find that Defendant's negligence resulted in a reduction in Mr. Haceesa's chance of survival from 65% to 50% and that the damage award thus should be 15% of the total damages as found by the Court.  Further, Plaintiffs request that the Court award post-judgment interest of $11,442.64 and, in

accordance with the Court's prior determination, costs of $1,847.81. Defendant filed a response in opposition on November 26, 2003. According to Defendant, it is responsible only for 5% of the reduction in Mr. Haceesa's chance of survival. Further, Defendant argues that, pursuant to the Tenth Circuit opinion, all of the claims in this action are barred other than Ms. Haceesa's loss of consortium claim. Defendant concedes that an award of costs is proper but contends that an award of post-judgment interest is not. On December 11, 2003, Plaintiffs filed their reply papers.

## DISCUSSION

I.    <u>Loss of Chance Calculation</u>

In its decision, the Tenth Circuit agreed with this Court that Defendant and San Juan Regional were successive tortfeasors, holding: "we conclude that the Government's failure to properly diagnose and treat Haceesa on April 25 reduced his chance, to some degree, of recovering from his illness, and that San Juan Regional's subsequent failure to properly diagnose and treat Haceesa on April 27 and 28 further reduced his chances, thus resulting in separate and divisible injuries." *Haceesa*, 309 F.3d at 730. The Tenth Circuit, however, rejected this Court's conclusion that Defendant is responsible for all damages incurred by Plaintiffs. Accordingly, the Tenth Circuit instructed this Court, on remand, "to make findings of fact regarding the loss of chance of survival caused by the Government's medical negligence and the amount of damages associated exclusively with that loss of chance." *Id.* at 731.

During the trial, Dr. Diane Goade testified as an expert on Plaintiffs' behalf. As set forth in the Amended Findings, the Court credited Dr. Goade's professional opinion over that of Defendant's expert, Dr. Doug Mapel, and found Dr. Goade to be the authority about the state of the knowledge in the field about hantavirus and, specifically, about how to screen for and diagnose the disease. Dr.

Goade testified that if the staff at NNMNH had taken a blood sample from Mr. Haceesa and sent the sample to UNMNH for testing, the hantavirus would have been detected and Mr. Haceesa would have been transferred to UNMH for treatment no later than Monday, April 27, 1998, at which time his chance of survival would have been 65%. Instead of taking a blood sample, the staff at NNMNH released Mr. Haceesa, instructing him to seek treatment at the local clinic on Monday, April 27, 1998. Thus, as a direct result of the negligent care provided by NNMNH and its staff, Mr. Haceesa did not visit San Juan Regional until Monday, April 27, 1998.

Even if San Juan Regional had properly taken a blood sample immediately upon Mr. Haceesa's arrival on Monday, April 27, 1998, the trial testimony demonstrates that the test results would not have been available and the hantavirus would not have been detected until 10:00 p.m. on Monday, April 27, 1998. The trial testimony further demonstrates that Mr. Haceesa would not have been transported to UNMH for appropriate treatment until the morning of Tuesday, April 28, 1998. As Defendant admits, by Tuesday, April 28, 1998, Mr. Haceesa was in full cardiopulmonary collapse and his chance of survival was only 50%. Thus, even if there had been no negligence on the part of San Juan Regional, the failure of the staff at NNMNH to do anything but instruct Mr. Haceesa to visit the local clinic on April 27, 1998 made it impossible for the hantavirus to be detected before he entered full cardiopulmonary collapse and, consequently, before his chance of survival was reduced from 65% to 50%. Accordingly, Mr. Haceesa suffered a 15% reduction in his chance of survival solely because of Defendant's negligence. In accordance with the Tenth Circuit's mandate, this Court thus finds that Defendant's medical negligence caused a reduction of 15% in Mr. Haceesa's chance of survival.

II.     Dismissal of the Estate's Claims

The FTCA sets forth specific parameters for filing a tort claim against the government.  Once

such a claim accrues, a claimant has two years to present that claim in writing to the appropriate

federal agency.  *See* 28 U.S.C. §2401.  The federal agency then has six months to reach a final

disposition on the claim.  If the agency denies the claim, the claimant has six months thereafter to file

suit in federal court.  Filing a federal suit before notice of final denial by the federal agency constitutes

a failure to exhaust administrative remedies and warrants dismissal by the district court.  *See Haceesa*,

309 F.3d at 733.  Moreover, "[a] tort claim against the United States shall be forever barred . . .

unless action is begun within six months after the date of mailing . . . of notice of final denial of the

claim by the agency to which it was presented."  28 U.S.C. §2401(b).  Thus, in order for the district

court to have subject matter jurisdiction over an action brought under the FTCA, the action must be

brought after the express or constructive denial of the administrative claim by the appropriate federal

agency and within six months after the agency's denial of such claim.

The original Complaint for Medical Negligence and Wrongful Death was filed on January 15,

1999, less than six months after the administrative claim was filed on behalf of the Estate on October

30, 1998 and before denial of that claim in April 1999.  The only Plaintiffs named in the original

Complaint were Ms. Haceesa, individually, and the Conservator for Shenoel.  The original Complaint

sought damages for funeral expenses, loss of earnings, emotional distress, loss of household services,

loss of consortium, loss of parental guidance, counseling and companionship, shock and physical

manifestation of emotional injuries.  While the original Complaint listed loss of consortium as an

element of damages, it did not set forth a separate cause of action or state a jurisdictional basis for

such a claim.

-7-

On December 3, 1999, more than six months after the denial of the Estate's administrative claim in April 1999, Plaintiffs filed their Motion to Amend, seeking to add Ms. Haceesa as Personal Representative of the Estate and to add two elements of damages: pain and suffering caused to Mr. Haceesa prior to his death and Mr. Haceesa's loss of enjoyment of life. Defendant opposed Plaintiffs' motion, arguing that the Court lacked subject matter jurisdiction over the claims of the Personal Representative because she did not attempt to join the action until after the statutory period of limitation had expired. Defendant also argued that the loss of consortium claim should be dismissed because such a claim may not be brought under the New Mexico Wrongful Death Act but rather is a separate common law cause of action which may be brought only by the spouse in her individual capacity. The district court allowed the amendments, explaining that relation back of the amendments to the original Complaint was appropriate. In addition, the district court granted leave to Plaintiffs to state properly a claim for loss of consortium.

On March 6, 2000, Defendant filed its Motion for Reconsideration. Defendant noted that the original Complaint was filed less than six months after the filing of the Estate's administrative claim and before final denial of the Estate's administrative claim. Accordingly, Defendant argued, if the district court allowed relation back of the amendments to the date of the filing of the original Complaint, the filing of the Estate's federal action would constitute a failure to exhaust administrative remedies and the Court thus would not have jurisdiction over the Estate's claims. Although acknowledging the issue raised by Defendant, the district court denied the motion. The district court noted that the FTCA requires that claims be presented to the appropriate federal agency by filing (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim. According to the district court, the administrative

claims filed by Ms. Haceesa and the Conservator for Shenoel described circumstances attending Mr. Haceesa's death and the resulting damages, clearly indicated wrongful death claims and stated the amount of the wrongful death claims.  Thus, the district court concluded, although neither Ms. Haceesa nor the Conservator for Shenoel was the Personal Representative when the administrative claims were filed, their administrative claims provided Defendant with the minimal notice required under the FTCA.

On April 20, 2000, Plaintiffs filed an Amended Complaint in accordance with the Court's orders.  The Amended Complaint added Ms. Haceesa as Personal Representative of the Estate, added claims for Mr. Haceesa's loss of enjoyment of life and pain and suffering and added a separate count for loss of consortium.  After conducting a bench trial, the Court entered the Amended Findings, awarding damages on:  Plaintiffs' claims for lost earning capacity, loss of household services, emotional distress and funeral expenses, all of which had been set forth in the original Complaint; Plaintiffs' claims for loss of enjoyment of life and pain and suffering, both of which were added in the Amended Complaint; Ms. Haceesa's claim for loss of consortium, which was properly stated in the Amended Complaint; and Shenoel's claim for loss of parental guidance, counseling and companionship.

In its subsequent appeal, Defendant argued, *inter alia*, that the lawsuit by the Estate was not timely filed.  As in its Motion for Reconsideration, Defendant again argued that the Estate's claims were barred because the amendments to the Complaint were made after expiration of the statutory period and because relation back of the amendments to the original Complaint would render the claims premature.  In its appellate brief, however, Defendant limited its argument to the two claims that were added in the Amended Complaint, *i.e.*, the claims for loss of enjoyment of life and pain and

suffering.  Specifically, Defendant's brief states:  "The estate's claims in this lawsuit requested recovery for loss of enjoyment of life, pain and suffering, and emotional distress.  Only the personal representative of the decedent can bring such claims under New Mexico law."  Defendant's Appeal Brief at 34.  Moreover, Defendant requested that the Tenth Circuit overturn this Court's award of damages only on these claims, arguing that "[t]his is the recovery by the Estate . . . that must be denied due to the late filing of its cause of action."  *Id.* at 35.

        In its opinion, the Tenth Circuit concluded that "the Estate's claims were not filed within the requisite time parameters."  *Haceesa*, 309 F.3d at 733.  The Tenth Circuit explained that the Estate's claims would be valid only if the administrative claims filed by Ms. Haceesa and the Conservator for Shenoel were sufficient to put Defendant on notice that claimants were seeking to assert a wrongful death claim on behalf of the Estate.  Specifically, the Tenth Circuit stated, "the question is whether the administrative forms filed on July 2, 1998 gave the Government specific notice that the claimants intended to assert causes of action on their own behalf (e.g., a claim by Beverly Haceesa on her own behalf for loss of consortium) and on behalf of the Estate."  *Id.* at 734.  Contrary to the conclusion reached earlier by the district court on Defendant's Motion for Reconsideration, the Tenth Circuit held that such notice was lacking.

        In reaching this decision, the Tenth Circuit reviewed the administrative claims filed by Ms. Haceesa and the Conservator for Shenoel.  The administrative claim form instructed the claimant to state the "nature and extent of each injury or cause of death which forms the basis of the claim."  *Id.* at 734.  On her claim form, Ms. Haceesa stated:  "Mr. Haceesa died due to failure to properly diagnose and treat.  Beverly Haceesa, his wife, makes a [claim] for loss of spousal support, loss of consortium, loss of love and affection, emotional distress and mental anguish."  *Id.*  Ms. Haceesa's

claim also indicated that she was seeking $4 million in damages for "personal injury." *Id.*  On the claim form filed on behalf of Shenoel, the Conservator stated:  "Hardy Haceesa died due to failure to properly diagnose and treat.  Shenoel Haceesa, his four (4) year old daughter, lost her father and hereby makes a claim for loss of parental guidance and support; loss of his love and affection, emotional distress and mental anguish." *Id.*  at 735.  Based on the statements provided on the claim forms, the Tenth Circuit concluded "that Beverly Haceesa was asserting claims only on her own behalf (e.g., a claim for loss of consortium) and was not seeking to recover on behalf of the Estate." *Id.* at 734-35.  Similarly, the Tenth Circuit concluded that the claims stated by the Conservator for Shenoel "were focused solely on the loss suffered by Shenoel Haceesa. . . . [N]othing in the claim indicates that the conservator was acting on behalf of the Estate, or was otherwise seeking to recover damages for the damages personally incurred by Haceesa." *Id.* at 735.  Based on its conclusions, the Tenth Circuit held that "the claim of the Estate was not filed within the requisite time periods set forth by the FTCA and is thus 'forever barred.'" *Id.* at 735 (quoting 28 U.S.C. §2401(b)).  The Tenth Circuit directed this Court "to dismiss the Estate's claims." *Id.*

The Tenth Circuit does not, however, clarify which claims it considers to be "the claim of the Estate."  Nowhere in the opinion does the Tenth Circuit specify whether its mandate for dismissal applies only to the Estate's claims that were added by leave of court in the Amended Complaint, *i.e.*, the claims for Mr. Haceesa's loss of enjoyment of life and pain and suffering, or whether it applies also to the claims set forth in the original Complaint that should have been but were not originally brought on behalf of the Estate, *i.e.*, the claims for lost earning capacity, loss of household services, emotional distress and funeral expenses.  Plaintiffs contend that the Tenth Circuit opinion applies only to those claims added in the Amended Complaint.  Defendant argues that the Tenth Circuit opinion

-11-

requires the dismissal of both the wrongful death claims set forth in the original Complaint and those added in the Amended Complaint.

Under the relevant New Mexico statute, wrongful death claims can be brought only by the personal representative of an estate. *See* N.M. Stat. Ann. 41-2-3. It is beyond dispute that the claims set forth in the original Complaint for lost earning capacity, loss of household services, emotional distress and funeral expenses constitute wrongful death claims that should have been brought by the Personal Representative on behalf of the Estate. *See* UJI 13-1839, N.M. Stat. Ann. 2002 (New Mexico jury instruction stating that compensation may be awarded in a wrongful death action for funeral expenses, pain and suffering, lost earnings and earning capacity, lost household services, value of life, emotional distress to spouse and loss of guidance and counseling to children); *Romero v. Byers*, 117 N.M. 422, 426, 872 P.2d 840, 844 (1994) (explaining that allowing loss of consortium claim by spouse does not constitute double recovery because it does not encompass the claim for loss of household services on which damages can be recovered by the decedent's estate). There is no meaningful distinction between the wrongful death claims set forth in the original Complaint and those claims added in the Amended Complaint. The wrongful death claims set forth in the original Complaint belong to the Estate as much as do the claims added in the Amended Complaint. Accordingly, this Court can find no basis for reading the Tenth Circuit opinion to apply to the wrongful death claims added in the Amended Complaint but not to those claims set forth in the original Complaint. This Court thus is constrained to apply the Tenth Circuit's holding to all of the wrongful death claims set forth in this action.

As discussed above, the Tenth Circuit concluded that the Estate's claims were not timely and that Defendant did not have sufficient notice of the Estate's claims to allow this Court to exercise

subject matter jurisdiction over those claims.  Based on these conclusions,  the Tenth Circuit held that the Estate's claims were "forever barred" and instructed this Court to dismiss those claims.  This Court thus is bound to dismiss all of the wrongful death claims set forth in this action, including those set forth in the original Complaint which should have been brought by the Personal Representative on behalf of the Estate.

Plaintiffs' arguments to the contrary are unavailing.  First, Plaintiffs argue that, because the only issue raised by Defendant on appeal was that the claims added in the Amended Complaint should be dismissed, Defendant has waived its right to argue that the wrongful death claims set forth in the original Complaint should be dismissed.  Defendant's failure to argue on appeal that all of the wrongful death claims in this action should be dismissed is inexplicable, especially since this is the very argument that Defendant made in its opposition to Plaintiff's Motion to Amend and in its Motion for Reconsideration.  Moreover, Defendant's silence on appeal with regard to the four wrongful death claims on which this Court granted a substantial damages award is disturbing.  Due to Defendant's silence, it is possible that the Tenth Circuit was not aware that claims set forth in the original Complaint were wrongful death claims that would be subject to dismissal pursuant to its opinion.  It follows that the Tenth Circuit may not have intended the unspoken yet indisputably far-reaching effect of its ruling by which this Court is now bound.

Nonetheless, even if Defendant had never raised the issue of subject matter jurisdiction before, this is an issue that properly can be raised at any stage of the litigation.  Subject matter jurisdiction means the court's "statutory or constitutional *power* to adjudicate the case." *United States v. Cotton*, 535 U.S. 625, 630 (2002) (emphasis in original).  Because subject matter jurisdiction "involves a court's power to hear a case, [it] can never be forfeited or waived." *Id.*  As a result, "defects in

-13-

subject-matter jurisdiction require correction regardless of whether the error was raised in district court."  *Id.*  Moreover, a party may raise a court's lack of subject matter jurisdiction at any time during a litigation, "even initially at the highest appellate instance."  *Kontrick v. Ryan*, 124 S. Ct. 906, 915 (2004); *see also* Fed. Rule Civ. Proc. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").  Thus, regardless of what issues Defendant brought to the attention of the Tenth Circuit, if there is no subject matter jurisdiction over the Estate's claims, those claims must be dismissed.  The Tenth Circuit specifically held that the Court lacks subject matter jurisdiction over the Estate's claims. On remand, this Court is powerless to make a contradictory determination.  Accordingly, in dismissing all of the wrongful death claims in this action, this Court is not, as Plaintiffs contend, reopening the Amended Judgment but rather following the mandate of the Tenth Circuit.

Next, Plaintiffs argue that New Mexico case law allows for someone other than the personal representative of an estate to bring a wrongful death action.  In support of this argument, Plaintiffs cite *In the Matter of Estate of Sumler*, 133 N.M. 319, 62 P.3d 776 (Ct. App. 2002).  *Sumler* does not, however, stand for the proposition that a wrongful death action is properly brought by the decedent's spouse or child individually.  Rather, that case holds that "[a] person seeking appointment as a Section 41-2-3 personal representative is not required to proceed under the Probate Code and the substantive and procedural provisions of the Probate do not govern the appointment of a Section 41-2-3 personal representative."  *Id.* at 322, 62 P.3d at 779.  Thus, *Sumler* addresses the interaction of the wrongful death statute and the probate code, an issue which is not relevant to the instant dispute.  Further, *Sumler* states that a petition for appointment of a Section 41-2-3 personal representative may be brought with the wrongful death action itself.  *See id.*  In the instant case,

-14-

however, Ms. Haceesa did not seek appointment as Personal Representative of the Estate in the original Complaint.  To the contrary, she did so outside of the requisite time period set forth in the FTCA.  Thus, *Sumler* does not support Plaintiffs' position.

III.   Loss of Consortium Claim

In the Amended Findings, this Court found that the value of Ms. Haceesa's loss of consortium was $250,000.  The Tenth Circuit did not reverse this finding.  Defendant does not object to an award of damages on this claim.  As set forth above, the Court has determined that Defendant is responsible for 15% of the loss in Mr. Haceesa's chance of survival.  Accordingly, the total amount of damages to be awarded to Plaintiffs on this claim is 15% of $250,000, or $37,500.

IV.   Loss of Parental Guidance, Counseling and Companionship Claim

In the Amended Findings, this Court found that the value of Shenoel's loss of parental guidance, counseling and companionship was $250,000.  The Tenth Circuit did not reverse this finding.  Defendant objects to an award of damages on this claim, arguing that loss of guidance and counseling by a minor child is a pecuniary injury under New Mexico's wrongful death statute. Defendant's position is incorrect.  As the Tenth Circuit acknowledged in its opinion, "it is unclear under New Mexico law whether a minor child may bring a separate cause of action, aside from a wrongful death action, to recover for loss of guidance and counseling."  *Haceesa*, 309 F.3d at 734. In *Otero v. City of Albuquerque*, 965 P.2d 354 (Ct. App. 1998), the New Mexico Court of Appeals specifically addressed this issue, stating:

> To avoid any implication to the contrary, we first emphasize that there is one issue of law that we are not deciding on this appeal – the proper procedure for a child to bring a claim of loss of guidance and counseling arising from the wrongful death of a parent.  We note two possibilities.  A child could, as [the minor plaintiff] did here, bring a separate claim against the alleged tortfeasor, seeking damages that would be

> paid directly to the child.  Alternatively, the loss of guidance and counseling could be
> included as part of the damages recoverable in a wrongful death action. . . .  In
> *Romero v. Byers*, 117 N.M. 422, 424, 872 P.2d 840, 842 (1994), our Supreme Court
> held that "loss of consortium damages may not be awarded for spousal loss of
> consortium under the New Mexico Wrongful Death Act . . . [and a] loss of
> consortium claim is a separate cause of action to be brought by the spouse."  On the
> other hand, with respect to loss by a minor child of guidance and counseling, the
> Court held that such loss "may be considered by a jury in fixing pecuniary loss to the
> survivors" and "[t]he jury should be allowed to assess this loss as part of the value of
> the decedent's life" in a wrongful death action.  *Id.* at 428, 872 P.2d at 846.

*Otero*, 965 P.2d at 356-57.  The Court of Appeals specifically declined to find that the minor

plaintiff's separate cause of action was barred by *Romero*.

        This Court thus has discretion to find that Shenoel's claim for loss of guidance and counseling

was properly stated as a separate claim against Defendant.  Indeed, the Conservator for Shenoel

properly filed an administrative claim and commenced the instant action within the requisite time

period following denial of that administrative claim.  Moreover, the administrative claim clearly put

Defendant on notice that Shenoel was asserting a claim on her own behalf for loss of guidance and

counseling.  As set forth above, the administrative claim stated: "Shenoel Haceesa, [Mr. Haceesa's]

four (4) year old daughter, lost her father and hereby makes a claim for loss of parental guidance and

support; loss of his love and affection, emotional distress and mental anguish."   Based on this

statement, the Tenth Circuit specifically found that this claim "was focused solely on the loss suffered

by Shenoel Haceesa."  Moreover, it was for this very reason that the Tenth Circuit concluded that the

administrative claim did not indicate "that the conservator was acting on behalf of the Estate, or was

otherwise seeking to recover damages for the damages personally incurred by Haceesa."  *Haceesa*,

309 F.3d at 735.  It would be inherently contradictory to find that Shenoel's administrative claim was

insufficient to put Defendant on notice of a wrongful death action but that, nonetheless, Shenoel's

-16-

claims for loss of guidance and counseling must be considered part of the subsequent, improperly filed wrongful death action.  It is unfathomable that the Tenth Circuit intended for its opinion to be interpreted to reach such an inequitable result.

Accordingly, the Court will award damages to Plaintiff on this claim.  As set forth above, the Court has determined that Defendant is responsible for 15% of the loss in Mr. Haceesa's chance of survival. The total amount of damages to be awarded to Plaintiffs on the loss of parental guidance, counseling and companionship claim thus is 15% of $250,000, or $37,500.

V.     Post-Judgment Interest

Plaintiff requests post-judgment interest.  Defendant opposes this request, arguing that Plaintiffs are not entitled to post-judgment interest because there has been no final judgment in this case.  The governing statutory provision, 31 U.S.C. §1304, provides in relevant part:

(b)(1) Interest may be paid from the appropriation made by this section –

(A) on a judgment of a district court, only when the judgment becomes final after review on appeal or petition by the United States government, and then only from the date of filing of the transcript of the judgment with the Secretary of the Treasury through the day before the date of the mandate of affirmance.

In the instant case, this Court entered its Amended Judgment on June 21, 2001.  The Tenth Circuit's mandate was issued on December 18, 2002.  The parties' papers do not indicate when the transcript of the Amended Judgment was filed with the Secretary of the Treasury.

The Tenth Circuit opinion reversed and remanded the case to this Court to (1) determine the loss of chance of survival caused by Defendant's medical negligence and the amount of damages associated exclusively with that loss of chance and (2) dismiss the Estate's claims.  Nonetheless, the Tenth Circuit affirmed this Court's holding that Defendant and San Juan Regional were successive

tortfeasors.  *See Haceesa*, 309 F.3d at 730.  Moreover, the Tenth Circuit affirmed that Defendant's negligence proximately caused at least a portion of the loss of the chance of survival that Mr. Haceesa would have had with proper diagnosis and treatment. Specifically, the Tenth Circuit concluded:  "the Government's failure to properly diagnose and treat Haceesa on April 25 reduced his chance, to some degree, of recovering from his illness, and that San Juan Regional's subsequent failure to properly diagnose and treat Haceesa on April 27 and 28 further reduced his chances, thus resulting in separate and divisible injuries." *Id.* at 731.

In *Brooks v. United States*, 757 F.2d 734 (5th Cir. 1985), the Fifth Circuit had remanded the case to the district court for a reapportionment of damages.  Over the government's objection, the Fifth Circuit allowed post-judgment interest, explaining:

> In the instant case, the original judgment was substantially affirmed by this Court on appeal.  The district court on remand, acting consistently with this Court's prior opinion, reduced the Government's comparative fault by fifteen percent and again entered judgment for the plaintiffs.  Under such circumstances, even where the case is nominally reversed in part and remanded, the case is to be treated for interest purposes as though the portions of the judgment unaffected by the reversal and remand were affirmed.

*Id.* at 740; *see also Desart v. United States*, 947 F.2d 871 (9th Cir. 1991) (awarding post-judgment interest despite fact that appellate court had reversed district court on two points).

Under *Brooks*, an award of post-judgment interest is appropriate in this case.  While this case was "nominally reversed . . . and remanded," the Tenth Circuit substantially affirmed this Court's Amended Judgment.  As in *Brooks*, the Tenth Circuit remanded for a reduction in Defendant's comparative fault and attendant damages.  Accordingly, for purposes of determining the applicability of post-judgment interest, those portions of the Amended Judgment unaffected by the reversal and remand should be treated as if they were affirmed.  The Court thus orders that Defendant pay to

-18-

Plaintiffs post-judgment interest at the statutory rate for the period from the date of filing of the transcript of the Amended Judgment with the Secretary of the Treasury until December 17, 2002.

## **<u>CONCLUSION</u>**

In accordance with the Tenth Circuit's opinion in *Haceesa v. United States*, 309 F.3d 722 (10th Cir. 2002), this Court determines that Defendant's negligence caused a reduction of 15% in Mr. Haceesa's chance of survival. Also in accordance with the Tenth Circuit opinion, this Court dismisses the Estate's claims, namely the claims for lost earning capacity, loss of household services, emotional distress, funeral expenses, loss of enjoyment of life and pain and suffering. With regard to Plaintiff Ms. Haceesa's loss of consortium claim, the Court awards damages in the amount of $37,500. With regard to Plaintiff Shenoel's claim for loss of parental guidance, counseling and companionship, which claim was brought on her behalf by Plaintiff First Financial Trust Company as Conservator, the Court awards damages in the amount of $37,500. In addition, the Court awards to Plaintiffs costs in the amount of $1,847.81. Finally, the Court awards post-judgment interest at the statutory rate for the period from the date of filing of the transcript of the Amended Judgment with the Secretary of the Treasury until December 17, 2002.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Entry of Judgment is **GRANTED** in part and **DENIED** in part**.**

**DATED** this 23rd day of September, 2004.

_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

<u>Attorneys for Plaintiff:</u>
James P. Lyle
Turner Branch

<u>Attorney for Defendant</u>:
Jan Elizabeth Mitchell